(No. 42545.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* LEON STEPHENY, Appellant.

*Opinion filed September 22, 1970.*

WARD, J., took no part.

JOHN E. CORKERY, of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago,

(JOEL M. FLAUM, Assistant Attorney General, and ELMER C. KISSANE and LAURENCE J. BOLON, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

At the conclusion of a 1965 bench trial in the Cook County circuit court on a charge of murder Leon Stepheny was found guilty of voluntary manslaughter and sentenced to 10-20 years imprisonment. An appeal resulted in affirmance of that conviction by the appellate court. (76 Ill. App. 2d 131.) We denied leave to appeal. 35 Ill.2d 631.

Thereafter a post-conviction petition was filed. (Ill. Rev. Stat. 1967, ch. 38, art. 122.) It was dismissed on motion of the People, and, on appeal, this court summarily reversed (No. 41349, not reported) because of the inadequate representation of counsel. Present counsel, who has acted with commendable diligence and thoroughness, was then appointed by the trial court, and a well-drafted, amended post-conviction petition was filed. That petition was also dismissed on motion by the People without an evidentiary hearing, and it is from that judgment that this appeal is before us.

The amended petition alleges that defendant's original counsel in effect unauthorizedly pleaded defendant guilty to voluntary manslaughter by suggesting during his opening statement and closing argument that "if there is a finding of guilty, that probably this Court can find him guilty of a lesser charge * * *" and "I respectfully submit that that is what I believe would serve the ends of [J]ustice in this case.", thus abdicating counsel's role as an advocate and denying defendant his right to a fair trial with effective representation by counsel on the manslaughter charge. It is further alleged that defendant was not proved guilty beyond a reasonable doubt in that the trial judge stated, "* * * there is no doubt in my mind that the State has proved their

case", without articulating the standard by which he measured that proof; and that the trial judge was so impressed by the size of the gun which defendant was carrying, that his sense of objectivity was lost and he became prejudiced against defendant as is manifest from his record comments relating to the gun. It is also alleged that defendant was not advised of his constitutional rights after he surrendered, and that he could not be convicted of voluntary manslaughter on a murder indictment. As to all of these allegations, the trial court dismissal was clearly correct, for their foundations rest exclusively in the record of the original trial proceedings and those questions either were or could have been raised on the earlier appeal. As to them the appellate court affirmance is *res judicata. People* v. *Hill,* 44 Ill.2d 299; *People* v. *Ashley,* 34 Ill.2d 402.

The more troublesome allegations are those relating to the inadequacy of the representation by defendant's trial counsel which do not rest entirely upon the trial record and are not barred by the *res judicata* principle. The killing occurred during a "crap" game participated in by defendant and four other men including decedent, Richard Coleman, who was decedent's brother and defendant's brother-in-law, Buck Fields and Willie Harris. The State's version of the shooting is that defendant and the unarmed decedent became involved in an argument and that defendant shot decedent without provocation. Defendant maintains, and so testified, that decedent had a .22 caliber pistol which he drew before defendant pulled his own gun (which, defendant testified, he carried because he was a nightwatchman). Richard Coleman and Field both testified; neither saw a gun in decedent's possession. Harris was not called by either side. Attached to defendant's post-conviction petition are signed statements by Willie Harris and Jessie Mae Coleman who is defendant's sister and the wife of decedent's brother (Richard Coleman). She was not a witness at the trial. These statements are dated April 30 and April 29, 1969. It is re-

cited in Jessie Mae Coleman's statement that she is presently separated from her husband; that she was in another room in the apartment the night of the shooting; that she heard decedent say to defendant, "We could take care of this right now you know", and later a shot was fired; that she left to tell her mother what had happened, and, when she returned decedent's body was lying on the sidewalk; that Jessie Mae Coleman was then told by a girl in the crowd, whose name she does not now recall with certainty, "that a man had come by and taken a gun and some other items from Lee Phillip Coleman's body"; and that "it was common knowledge in the neighborhood that Lee Phillip Coleman had shot and killed another person in a dispute over gambling that I believe took place earlier in the year." Willie Harris's statement recites that he was present at the shooting; that decedent had "a pointed object" in his right pants pocket, but that he was unsure whether it was a gun; that when shot decedent "had his right hand either in his pants pocket or sport coat pocket"; that he was told by a person whose name he cannot recall that someone had later taken a gun from the body of decedent; that it was generally known that decedent had shot and killed another person during the previous summer, and that "a number of fellows in the neighborhood knew that decedent had served time because of the killing of still another person some time before."

As further support for the allegations relating to the inadequacy of defendant's trial counsel, there is included in the post-conviction petition a copy of the petition filed by that lawyer requesting compensation for his services as appointed counsel. It is now urged that the itemized statement of services indicates trial counsel spent no time on the case between February 3 and February 23, the date of the trial, and that only 4 hours were spent on the case between December 29 and February 3. The statement does, however, indicate a total of 30 hours spent on the case from November 16, 1964, the date of appointment, through February

23, and we are not prepared to say that this is necessarily indicative of inadequate investigation and preparation.

As this court indicated in its early discussion of the post-conviction remedy, (*People* v. *Jennings,* 411 Ill. 21, 26), the proper focus of concern at a hearing upon the State's motion to dismiss a post-conviction petition is the sufficiency of its allegations and supporting documents. (*People* v. *Price,* 44 Ill.2d 332, 333; *People* v. *Airmers,* 34 Ill.2d 222, 226.) If in this case those allegations and documents are sufficient, if true, to establish incompetent representation, then an evidentiary hearing must be held to determine the true facts, and the circuit court erred in sustaining the motion to dismiss. (*People* v. *Sigafus,* 39 Ill.2d 68, 70; *Airmers; Jennings.*) We believe the facts alleged and the normal inferences therefrom are sufficient to require an evidentiary hearing.

In *People* v. *Morris,* 3 Ill.2d 437 at 449, we stated the controlling standard measuring the adequacy of the representation by counsel in this language: "defendant must clearly establish: (1) actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different." (See, also, *People* v. *Hill,* 44 Ill.2d 299, 304; *People* v. *Ashley,* 34 Ill.2d 402 at 411; *People* v. *Robinson,* 21 Ill.2d 30, 36.) As earlier indicated, neither Jessie Mae Coleman nor Willie Harris testified at the trial. Had they done so, and had their testimony been as their statements now indicate it would have been, Harris's testimony as to "the pointed object" in defendant's pocket and Jessie Mae Coleman's statement as to the implied threat uttered by decedent would apparently be admissible, relevant and corroborative of defendant's testimony. Also, their assertions that decedent was known to have killed two other persons would, perhaps, have been useful to defense counsel for, if defendant were aware of decedent's reputation for

violence, proof of that reputation together with defendant's testimony as to his knowledge of it would be admissible on the issue of the reasonableness of his actions in defending himself. (See *People* v. *Adams,* 25 Ill.2d 568, 572, and cases there cited.) In addition, had defense counsel known that Harris and Jessie Mae had been told of the removal of a gun from decedent's body it might well have then been possible to locate the witnesses who saw the removal occur, if, in fact, it did occur. Testimony of such witnesses would have been relevant and, again, corroborative of defendant's testimony regarding the shooting. The cumulative effect of such testimony, if available at the time of trial, could well have produced a different result, for it is clear from the transcript of the original trial proceedings that the judge, on the evidence which was presented, considered there was at least some provocation for defendant's conduct.

If as alleged by defendant, trial counsel made no effort to locate and interview those present in the apartment at the time of the shooting, and the favorable evidence now indicated to have been available was actually available, it is abundantly clear that counsel's duty to his client was inadequately discharged, and that defendant was sufficiently prejudiced to be entitled to a new trial. There is nothing in the record which indicates whether any attempt was made to locate witnesses, whether such interviews occurred nor the results thereof. Perhaps Harris could not be located prior to trial, or perhaps his testimony at that time was deemed unusable by defense counsel because it would have included unfavorable facts not embraced in the statement presented with the post-conviction petition. Also, it is not inconceivable that Jessie Mae Coleman's recollection of events, now that she is separated from her husband, may be more favorable to her brother's (defendant's) interests than it was at the time of trial when she was living with her husband who was then testifying as a principal witness for the State in its prosecution of the person who had shot his

brother. In short, it is at this stage not a necessary conclusion that failure to use this evidence was the result of counsel's incompetence in investigating and preparing the case for trial. But, in our judgment, the petition is clearly sufficient to entitle defendant to an evidentiary hearing at which the proof, including the testimony of original trial counsel, will presumably enable the trial court to accurately evaluate the adequacy of the representation afforded defendant.

The judgment of the circuit court of Cook County is accordingly reversed and the cause remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.