THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. ROY VALADEZ, Petitioner-Appellant.

(No. 58622;

First District (1st Division)—February 4, 1974.

BURKE, J., took no part.

James J. Doherty, Public Defender, of Chicago (J. Powers McGuire, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Lee T. Hettinger, Assistant State's Attorneys, of counsel), for the People.

PER CURIAM:

On February 1, 1972, the defendant-petitioner, Roy Valadez, pleaded guilty to a two-count indictment charging him with aggravated kidnapping and aggravated battery. (Ill. Rev. Stat. 1969, ch. 38, pars. 10—2, 12—4.) He was sentenced to concurrent terms of five to ten years in the Illinois State Penitentiary, but on direct appeal to this court, the conviction and sentence on the aggravated battery charge were reversed and the conviction and sentence for aggravated kidnapping affirmed. (*People v. Valadez*, 15 Ill.App.3d 585, 304 N.E.2d 667.) On August 14, 1972, defendant filed a *pro se* petition under the Post-Conviction Hearing Act which, as subsequently amended by appointed counsel, alleged that his plea of guilty was the result of his attorney's statement that a deal had been worked out for him to be sentenced to no more than two years and one day if he entered a plea of guilty. On motion of the State, the petition was dismissed without an evidentiary hearing on November 2, 1972. On this appeal, defendant contends that he was entitled to an evidentiary hearing on his claim and also that the trial court should have granted his motion for a substitution of judges.

Petitioner relies upon *People v. Wegner*, 40 Ill.2d 28, 237 N.E.2d 486, for the proposition that an evidentiary hearing was required because his petition and accompanying affidavits raised a factual issue. Wegner's petition alleged his plea was induced by misrepresentation of his privately retained counsel. An affidavit of his mother stated that his counsel had called her to say he had made an arrangement that if the petitioner pleaded guilty he would receive a maximum sentence of 30 to 90 days in jail, that her son was induced to plead guilty on the basis of these representations and in fact a sentence of one to four years was imposed. The Illinois Supreme Court concluded that the petition and affidavit alleged a violation of constitutional right, and that since the record did not positively rebut the defendant's allegations, an evidentiary hearing as to their truth or falsity was required. The State argues that in the case at bar, the record does positively rebut Valadez' allegations. *People v. Spicer*, 47 Ill.2d 114, 117-119, 264 N.E.2d 181.

The facts of the original incident may be summarized: On September 7, 1971, Robert J. Colwell was at 5300 north at the lakefront leaving the beach area when two unknown males, one of whom was identified as the defendant, approached him, put a gun in his side and told him to walk to a car, blindfolded him and left. He was taken to an apartment (that of defendant and Barbara Hendricks) where he was questioned about $250,000 of hallucinogenic pills. He was beaten and tortured at the apartment and later that evening taken to a wooded area and beaten again. He was taken to a garage, put into another car, handcuffed to the car and forced to spend the evening in the garage. The next day he was driven around the city, taken to another wooded area and beaten, and later that evening (September 8) taken back to the apartment where he was once again beaten and tortured. He was finally able to make his escape the following morning after being handcuffed to a bench in a garage. At one point he was burned with cigarettes and cigarette fluid.

Insofar as they pertain to the claim that the plea of guilty entered on February 1, 1972, was involuntary, the allegations of the amended petition were as follows: On February 1, 1972, petitioner's attorney, Saul Perdomo, stated to him that the judge was going to ask him questions concerning the plea of guilty, and that when answering the judge's questions, he should answer in accordance with the nod of his attorney's head, from side to side meaning no, and up and down meaning yes; Perdomo told him the judge's questioning was part of the courtroom procedure, not to be worried by the questions, that a deal had been worked out for him to be sentenced to no more than two years and one day if he entered a plea of guilty; relying on the promised sentence, he

pleaded guilty, and on February 15, 1972, when the case was up for sentencing, attorney DeLeonardis told him he would represent the petitioner in place of Perdomo; he was "shocked" to receive two five to ten year sentences, and spoke with his family, who informed him they had talked to Perdomo who told them he "was sentenced to a much larger term in jail" than he was "supposed to get."

■■ The petitioner also claimed that DeLeonardis' lack of familiarity with the case denied him due process, as did the judge's failure to grant a continuance, the judge's prejudice against him and the introduction of certain tape recordings at the hearing in aggravation and mitigation. However, these other contentions were decided in the direct appeal and that judgment is res judicata as to all issues actually raised; those issues that could have been presented but were not presented are deemed waived. (*People v. French*, 46 Ill.2d 104, 107, 262 N.E.2d 901, *cert. denied* 400 U.S. 1024, 27 L.Ed.2d 636, 91 S.Ct. 590.) Only the voluntariness of the guilty plea has been briefed.

■■ In order to determine whether the allegations of the petition were sufficient to warrant hearing, it is necessary to consider all those facts in the record bearing on the issue. (*People v. Spicer*, 47 Ill.2d 114, 118, 264 N.E.2d 181.) The report of proceedings shows that on February 1, 1972, the defendant, represented by Saul Perdomo, agreed in open court to a pretrial conference. After the conference, Perdomo stated on the record that the defendant wished to enter a plea of guilty to the charge and "throw himself on the mercy of the court." The plea was accepted after defendant was properly admonished and judgment entered on the finding of guilty. Specifically, defendant responded negatively when asked if threats or force or promises were used upon him and the court advised him of the possible sentence. The victim and a Chicago police officer testified to the facts surrounding the incident, and the record shows that other witnesses were present in court and prepared to testify, one of whom had taken the license number of the kidnapers' car and was able to identify the defendant. The judge stated that before proceeding with aggravation and mitigation, he would order a "thorough and complete investigation of the background" of the four defendants and the case was continued until February 15, 1972, when attorney Louis DeLeonardis appeared for the defendant, stating that Perdomo was in Florida. DeLeonardis was given a copy of the pre-sentence report and the matter continued until 2:30 the same afternoon to enable him to prepare for the case. In aggravation, the State discussed the facts of the crime and Valadez' three prior felony convictions, but stated that pursuant to the pre-trial conference, the State would make no specific recommendation as to sentence. For approximately 30 minutes, a tape

made during the kidnaping was played. After argument by counsel in mitigation, Valadez admitted he did most of the talking on the tapes, and carried on a lively discussion with the trial judge as to the significance of his participation in the crime, his past record and who was "to blame" for defendant's "problem" as Valadez characterized it. However, once the sentence was imposed, Valadez said nothing further.

Defendant strenuously urges that his affidavits raised a factual issue. In particular, he relies on an affidavit of his attorney, Saul Perdomo, dated October 17, 1972, stating that he told Valadez he would "probably receive a sentence of not less than two nor more than two years one day" and believed Valadez' plea was entered in reliance on that statement, on affidavits by members of defendant's family, his mother, father and girlfriend, that Perdomo had told each of them that if Valadez pleaded guilty, he would be sentenced to no more than two years and one day in the Illinois State Penitentiary. However, included in the papers accompanying the petition is a letter Perdomo wrote to the Chicago Bar Association on May 12, 1972, which more fully sets out the facts surrounding the entry of the plea as follows:

"After an initial plea bargain, Mr. Parrish [Assistant State's Attorney] indicated that he thought he could recommend a two year minimem [sic] sentence if it met the approval of his superiors. This was immediately communicated to the defendant and his family. Subsequently, the tentative offer was withdrawn at a later conference and from then on no offers were made. This was also made known to the defendant and his family.

I visited the defendant at the County Jail, and at the lockup of Judge Saul Epton's Courtroom. We fully discussed the facts of the case and the possible alternatives open. This discussion took place solely in English, the native language of the defendant which he spoke perfectly.

\* \* \*

On or about the first of February, 1972, \* \* \* a conference took place at the chambers of Judge Saul Epton with the attorneys of all four co-indictees represented, as well as the State. No promises were made by the Court or by the State. Subsequently, fully advised of these facts, all defendants entered guilty pleas to the indictments (kidnaping) including Roy Valadez, who was adequately apprised in the presence of Attorney Gus P. Giannis."

The original report of the proceedings at the guilty plea on February 1, 1972, shows that after a conference requested by Perdomo, to which Valadez explicitly assented, Perdomo told the court his client had decided to enter a plea of guilty and "throw himself at the mercy of

the court and hope that the court have [*sic*] mercy on him." After full admonishment by the court, defendant waived a jury, indicating no promises had been made to him. The court explained to the defendant that he would be sentenced to not less than one nor more than ten years. The report of proceedings of the plea of guilty on February 1, 1972, and the hearing in aggravation and mitigation on February 15, 1972, covers 80 pages of transcript and this does not include the contents of the tape (which was not transcribed).

It may, therefore, be safely concluded that the judge's personal recollection of the proceedings, along with the record, were sufficient to positively refute the allegations of the amended petition; an evidentiary hearing was, consequently, unnecessary. For example, the petition alleges Perdomo told Valadez to answer the judge's questions in accordance with how he, Perdomo, nodded his head, but such an obvious device would have been clearly evident to the presiding judge, especially as he was personally acquainted with the defendant who had appeared before him on other occasions. The petition claims the defendant was "shocked," thus explaining his silence when the sentence was entered. But Valadez, the record shows, was not at all reluctant to speak up, and shows he carried on a colloquy with the judge which extends over six pages in the transcript. It is difficult to believe that he would have remained silent upon hearing a sentence so at odds with the "deal" he now claims his attorney had worked out for him.

■■ Perdomo's affidavit indicates only that the defendant was told he would "probably" receive not more than two years and one day, and other statements made by Perdomo, specifically his letter to the Chicago Bar Association on May 12, 1972, indicate that the defendant was fully apprised that no deal had been made. The report of proceedings at the guilty plea and at the hearing in aggravation and mitigation lend credence to the statements made by Perdomo that the defendant was adequately and clearly admonished and that no promises had been made to him to induce him to plead guilty. Thus, the record itself shows that the defendant freely and voluntarily entered his plea of guilty knowing that any sentence within the permissible limits which the judge stated in open court could be imposed upon him. The trial court did not err in dismissing the petition without an evidentiary hearing.

■■■ Defendant has also argued that the judge should have granted his motion for a substitution of judges because the judge was prejudiced against him. A similar argument was rejected by the reviewing court on the direct appeal (slip opinion, pages 4-5), and there is no right to a substitution of judges in such a proceeding unless it is established that the judge will be a material witness or unless a showing of actual

prejudice is made. (*People v. Newell*, 41 Ill.2d 329, 333-334, 243 N.E.2d 200.) The judgment of the circuit court of Cook County is, therefore, affirmed.

Judgment affirmed.

Mr. JUSTICE BURKE took no part in the consideration or decision of this case.