THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.*
ALEXANDER BLAND, Petitioner-Appellant.

First District (2nd Division)   No. 78-98

Opinion filed December 29, 1978.—Rehearing denied January 25, 1979.

George C. Hook, of Chicago (Much, Shelist, Freed, Denenberg, Ament & Eiger, P. C., of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Iris E. Sholder, and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Alexander Bland, petitioner, was found guilty of murder and armed robbery on March 9, 1973, following a bench trial in the criminal division of the Circuit Court of Cook County. He was sentenced to a term of 20 to 50 years. On direct appeal we affirmed the judgment of the trial court, resolving against petitioner the sole issue raised, whether an accomplice's testimony was sufficiently credible to establish defendant's guilt beyond a reasonable doubt. *People v. Bland* (1st Dist. 1974), 18 Ill. App. 3d 994, 310 N.E.2d 658 (abstract).

On June 25, 1974, defendant filed a *pro se* post-conviction petition. Attorney George C. Hook entered an appearance as counsel for petitioner on October 31, 1974, and on March 29, 1977, defendant filed an amended petition for relief pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1977, ch. 38, pars. 122—1 through 122—7). The State filed a motion to dismiss the amended petition. After argument on the motion, the post-

conviction judge, who also presided at petitioner's bench trial, granted the motion to dismiss as to all issues except one, relating to alleged in-court coercion of the accomplice witness by a police officer, on which issue the court ordered the State to file an answer. Petitioner then filed a motion for the judge's recusal, but the court ultimately ruled that recusal was not required as the court was able to decide the issue based on the conflicting affidavits filed, without holding a hearing. The court then decided the issue against the petitioner. From this adverse resolution and from the order of dismissal, petitioner now appeals.

The issues on appeal are: (1) whether the court erred in dismissing without a hearing a petition supplemented by affidavits containing, *inter alia*, a recantation by the chief witness against petitioner; (2) whether the court erred in deciding the issue of in-court coercion of the chief prosecution witness on the basis of affidavits after a motion for recusal had been made; (3) whether the petition alleged sufficient facts to support petitioner's claim that he was denied his right to effective assistance of counsel at his original trial; (4) whether the trial court's finding that the petition failed to state a claim of ineffective assistance of counsel was based on improper grounds; (5) whether the court erred in dismissing without a hearing petitioner's claim that the State concealed evidence favorable to the defense; (6) whether the court similarly erred in dismissing a claim that the State used other perjurious testimony; (7) whether the court erred in dismissing petitioner's claim that his conviction was based on an erroneous standard of proof; and (8) whether the court properly dismissed petitioner's other claims relating to alleged pretrial improprieties and denials of constitutional rights and to the alleged failure of the trial court to make further inquiry to resolve ambiguities and conflicts in the case against petitioner.

While the testimony adduced at petitioner's trial was summarized in our first opinion (*People v. Bland* (1st Dist. 1974), 18 Ill. App. 3d 994, 310 N.E.2d 658 (abstract)) insofar as it is pertinent to this appeal, it is summarized again here. Dreamle Scott, then 17 years old, testified that at approximately 12 o'clock noon on September 17, 1972, she met defendant in front of her house on East 41st Street in Chicago and they discussed the possibility of robbing a cab. They hailed a cab driven by the victim, Eddie Moore, and petitioner told him to drive to 75th and Paulina and then around the corner; when the cab stopped, Ms. Scott got out and petitioner, pointing a handgun at Moore, ordered him from the cab. Ms. Scott testified that as petitioner took some money from Moore and as she approached Moore, Moore grabbed her and tried to push her into petitioner, knocking both to the ground. Ms. Scott got up and ran from the scene; as she ran, she looked back and saw nothing but heard three shots fired. Petitioner then joined her, they ran together, caught a bus to

return home, and petitioner gave her some of the money he had taken from Moore.

On cross-examination by Andre Mandeville, the public defender who represented petitioner at trial, Ms. Scott admitted that she had never been indicted or arrested as a result of the murder. She was also impeached by conflicts between her direct testimony and certain exculpatory testimony she had given before the grand jury which indicted petitioner. However, her direct testimony regarding the specific circumstances surrounding the incident and petitioner's participation therein was not challenged on cross-examination and remained unshaken. In addition, the following exchange took place:

"Q. [by defense counsel] Did anyone ever say to you that if you did not come and testify that you would go to jail?

A. Yes.

\* \* \*

THE COURT: Who said that?

THE WITNESS: A Officer, I don't know his name, Wiley."

Ms. Shirley Rushing, who lived near the scene of the incident, testified as a State's witness that at the time of the occurrence she heard about three shots fired; that she saw the man who shot Moore; and that she saw a lady and a man running from the scene of the shooting. The following exchange then took place:

"Q. [by prosecuting attorney] Was this the same man that you had just seen shooting the cab driver?

A. No.

Q. Which man was the lady running with?

A. I don't see him."

She was then asked to look around the courtroom and indicate whether she saw the man who had the gun, whereupon defense counsel objected, and no identification was ever made.

On cross-examination, Ms. Rushing acknowledged that she had described the man who did the shooting as six feet tall in her statement to the police after the incident, although in her direct testimony she described him as five feet nine inches to six feet tall. No questions relating to the identity of the man or men whom she had seen were asked.

On appeal, petitioner was represented by a different attorney from the public defender's office, Thomas Finegan. Petitioner argued that Ms. Scott's testimony was insufficiently credible to establish his guilt beyond a reasonable doubt and that Ms. Rushing's testimony contradicted Ms. Scott's at several junctures. Nevertheless, the court affirmed petitioner's conviction on the ground that it was certainly not plainly apparent that petitioner had not been proven guilty beyond a reasonable doubt.

Petitioner's amended petition, prepared by appointed counsel

outside the public defender's office, is voluminous in itself, and appended thereto are 38 separate exhibits, many of which are made up of several parts. We have considered the petition in its entirety, but rather than attempt to detail the contents of each allegation and exhibit at this point, we will discuss the material as it arises in our consideration of the issues petitioner has raised on appeal, as set out above.

We consider first the issue of whether the lower court erred in dismissing without a hearing a petition supplemented, *inter alia*, by an affidavit containing a recantation by the chief prosecution witness. Exhibit 4 of the amended petition consists of an affidavit by Dreamle Scott, the accomplice witness who implicated petitioner in a statement to the police and whose testimony established petitioner's participation in the murder and armed robbery. In her affidavit Ms. Scott avers that her statement and testimony were false, that petitioner did not participate in the crimes, and that another man altogether, named Melvin Jones, actually killed the cab driver. The affidavit set forth the same basic fact pattern as Ms. Scott had described in her direct testimony, only with Melvin Jones as the participant, rather than petitioner. Ms. Scott further averred that Melvin Jones threatened to kill her if she implicated him and did not accuse petitioner instead. Ms. Scott stated that the police told her that if she made a statement against petitioner, she would not be prosecuted. Ms. Scott further averred that it was only this promise and the threat by Jones against her life that led her to implicate petitioner. The affidavit was corroborated by two affidavits which stated that the affiants had once seen petitioner beat up Jones and heard Jones threaten petitioner with a "big pay-back," other than physical harm, and which recited that Ms. Scott had told the affiants shortly after the murder that petitioner had not done anything.

■■ The trial court dismissed this portion of the petition on the ground that it did not allege sufficient facts to demonstrate that the prosecution knowingly used perjured testimony, and therefore did not allege a substantial constitutional violation. However, in *People v. Shannon* (1st Dist. 1975), 28 Ill. App. 3d 873, 329 N.E.2d 399, this court held that a post-conviction petition establishing perjury need not also allege facts showing that the perjury was used knowingly. And in *People v. Hilliard* (1st Dist. 1978), 65 Ill. App. 3d 642, 382 N.E.2d 441, the court reversed the dismissal without a hearing of a petition alleging perjury by the chief prosecution witness, holding that an evidentiary hearing should have been held to search out the truth. While the post-conviction judge in the instant case was the same judge who presided at petitioner's trial and found Ms. Scott's testimony credible, in view of the fact that petitioner could not possibly have been convicted of these most serious offenses if Ms. Scott had testified at trial in a manner consistent with her affidavit, we do not

think that the court should have dismissed this part of the petition on the face of the affidavit in any event, without a hearing on the issue of whether Ms. Scott's recantation was credible.

The cases the State cites on this point are distinguishable. In both *People v. Goodpaster* (1966), 35 Ill. 2d 478, 221 N.E.2d 251, *cert. denied* (1967), 386 U.S. 967, 18 L. Ed. 2d 120, 87 S. Ct. 1051, and *People v. Bickham* (1st Dist. 1974), 23 Ill. App. 3d 1074, 320 N.E.2d 478, the outcome was based on a hearing; only after hearing the recanting witness' testimony did the court find the recantation incredible. In fact, in *Bickham* the State confessed error after the court in the first instance dismissed the petition without a hearing, resulting in the reversal of the dismissal by our supreme court. In *People v. Horobecki* (1st Dist. 1977), 48 Ill. App. 3d 598, 363 N.E.2d 1, a case on direct appeal, the court held only that a confession by another exculpating the accused did not raise a reasonable doubt of guilt in the face of positive and credible identification testimony. In contrast, in the case at bar, only the recanted testimony of Ms. Scott established petitioner's criminal participation. Finally, in *People v. Owens* (1976), 65 Ill. 2d 83, 357 N.E.2d 465, *cert. denied* (1977), 430 U.S. 955, 51 L. Ed. 2d 805, 97 S. Ct. 1600, the petition did not allege sufficient facts to establish perjury, as the affidavit submitted by the petitioner merely attempted to modify the witness' trial testimony.

The amended petition was also accompanied by the affidavit of Ms. Rushing, attempting to clarify or modify her trial testimony to the effect that petitioner was not the man involved in the shooting incident. Also accompanying the amended petition were affidavits by petitioner's former fiance and members of petitioner's family, all setting forth an alibi for petitioner. However, the purpose of a post-conviction petition is not to afford the petitioner another chance to litigate the issue of his guilt or innocence (*e.g., People v. Orndoff* (1968), 39 Ill. 2d 96, 233 N.E.2d 378), and, absent extraordinary circumstances, the court will not consider challenges to the sufficiency of the evidence. (*People v. Moore* (1975), 60 Ill. 2d 379, 327 N.E.2d 324, *cert. denied* (1975), 423 U.S. 938, 46 L. Ed. 2d 270, 96 S. Ct. 298.) Rather, the purpose of a post-conviction petition is to provide a remedy to persons who claim that in their trial substantial violations of constitutional rights occurred. (*E.g., People v. Stewart* (1st Dist. 1978), 66 Ill. App. 3d 342, 383 N.E.2d 1179.) Because the only constitutional issue raised by these affidavits is whether the failure by defense counsel to investigate and to present their contents at trial amounted to a denial of petitioner's right to effective assistance of counsel, we will examine the affidavits in that context only.

Before we turn to that issue, however, we consider the remaining issue raised by Ms. Scott's affidavit, whether the court erred in deciding

the issue of in-court coercion of Ms. Scott on the basis of affidavits after a motion for recusal had been made. Ms. Scott stated in her affidavit that Officer Wiley, the original complainant against petitioner, drove her to the courthouse on the day of the trial and on the way kept telling her to remember what he had told her and to repeat it on the witness stand. Ms. Scott further stated that when she took the stand, she became unwilling to testify, but as the bailiffs were attending to some problems with the microphone, Officer Wiley approached the stand and told her that if she didn't testify, she would go to jail and petitioner would go free. She stated that the judge saw Wiley approach the stand but did not hear him. Ms. Scott then averred that Wiley went back among the spectators and directed her testimony by indicating with a nod of his head how she was to answer certain questions. She stated that she would not have testified had Wiley not been there listening. She then stated that Wiley told her she had done well.

Rather than dismissing this portion of the petition, the post-conviction judge ordered the State to file an answer. The State responded by submitting affidavits by Howard Schaffner, the prosecutor who tried the case, and Claude Wiley, the officer who allegedly intimidated Ms. Scott. Mr. Schaffner stated that in a pretrial interview outside Wiley's presence, Ms. Scott answered questions in a manner entirely consistent with her trial testimony. He further stated that a bailiff did attempt to fix the microphone when Ms. Scott was called to testify, that he, Mr. Schaffner, was standing at the witness box the whole time, and that Wiley was never near the witness box. Officer Wiley stated in his affidavit that he did drive Ms. Scott and her mother to the courthouse, that at no time did he appear in the courtroom while Ms. Scott was testifying, and that he did not nod or make any head movements while Ms. Scott was testifying. The record only indicates that a bailiff did attempt to fix the microphone at the outset of Ms. Scott's testimony.

The court accepted the affidavits but once again requested that the State file a formal answer. Petitioner's counsel then moved that the post-conviction judge recuse himself because he was a witness to the alleged in-court coercion and because he had indicated a predisposition to rule against petitioner on that point at the prior proceedings on the State's motion to dismiss, when he called Ms. Scott's allegations "nonsense." At first the judge did agree to recuse himself, but after the State filed its answer, the judge decided that recusal would only be necessary if there were going to be a hearing at which he would be a witness. The court proceeded to deny the petition on the basis of the affidavits.

■■ On appeal, petitioner contends that the judge erred in not recusing himself, citing *People v. Wilson* (1967), 37 Ill. 2d 617, 230 N.E.2d 194. It is

well settled that while there is no absolute right to substitution of judges in a post-conviction proceeding, a judge should recuse himself where it is established that he will be a material witness or that actual prejudice exists. (*People v. Wilson; People v. Stokes* (1st Dist. 1974), 21 Ill. App. 3d 754, 316 N.E.2d 127.) *Wilson* involved an allegation regarding the effect of certain pretrial *in camera* conversations between the petitioner's attorney and the trial judge on the sentence the petitioner ultimately received. The trial judge would necessarily be a material witness and have knowledge *de hors* the record of the truth or falsity of the allegations. But while there is language in *Wilson* favorable to petitioner in the instant case, we find that *People v. Valadez* (1st Dist. 1974), 17 Ill. App. 3d 499, 308 N.E.2d 253, is more similar to the case at bar and is dispositive. In *Valadez* the court held that the judge's personal recollection of the proceedings, along with the record, were sufficient to positively rebut the petitioner's allegations that he made his guilty plea in accord with head nods from his counsel. In the instant case, the judge was able to rely on both the transcript and the affidavits to decide that the allegation was without merit, and we cannot find that he abused his discretion in not recusing himself.

■ We now turn to the issue of whether petitioner was denied his constitutional right to effective assistance of counsel. We first consider whether petitioner waived this issue by not raising it on his direct appeal. While the general rule is that the issue of trial counsel's competence is waived where the defendant is represented by a different attorney on appeal and does not raise the issue (*People v. Stewart* (1st Dist. 1978), 66 Ill. App. 3d 342, 383 N.E.2d 1179), the rule is relaxed due to obvious practical considerations where, as here, the defendant's attorneys at trial and on direct appeal, though different, were both from the office of the public defender. (*People v. Holmes* (1st Dist. 1974), 17 Ill. App. 3d 102, 307 N.E.2d 776; *People v. Johnson* (1st Dist. 1973), 16 Ill. App. 3d 79, 305 N.E.2d 697.) We therefore consider the merits of petitioner's contention.

Petitioner alleges that he was denied his right to effective counsel in that his attorney failed to interview or counsel him sufficiently, failed to preserve for use at trial substantial alibi evidence, failed to contact or interview any of the prosecution witnesses, failed to contact or interview any potential defense witnesses, failed to otherwise investigate the case, and failed to present any defense in petitioner's behalf although petitioner maintained his innocence. Petitioner also alleges that his counsel's conduct of cross-examination was grossly incompetent and that his counsel asserted that a conviction could be based on clear and convincing evidence.

The State essentially responds that petitioner's assertions are

conclusions without factual support and are based either on pure conjecture or on hindsight evaluations of alternative trial tactics, and therefore raise no constitutional issue requiring an evidentiary hearing.

We begin by noting that both petitioner and the State seem to have misconstrued the standard of competence applicable to the case at bar, involving appointed counsel. Petitioner, citing decisions from the Seventh Circuit (*e.g., United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634), argues that counsel's conduct fell short of the minimum professional standard of competent counsel, a standard which our supreme court recently declined to adopt as to *retained* counsel in *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677. The State argues that counsel's conduct did not amount to no representation at all or reduce the proceedings to a farce or sham. While that remains the standard applicable to *retained* counsel (*People v. Murphy*), the standard applicable to appointed counsel is still that first advanced in *People v. Morris* (1954), 3 Ill. 2d 437, 449, 121 N.E.2d 810, 817: "(1) actual incompetency of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different."

We agree that many of petitioner's allegations are based on conclusions, conjecture, or hindsight suggestions as to trial strategy, and that the required prejudice is often lacking. Specifically, we find without merit those allegations relating to counsel's failure to procure or use a nonconclusive ballistics report, negative fingerprint comparisons, an alleged photographic identification, and the identity of an informant who implicated a different suspect. We also find no merit in petitioner's allegations of incompetence of counsel at his arraignment and preliminary hearing. We further find that many of petitioner's contentions relating to counsel's cross-examination go to matters of judgment, discretion, or trial tactics and are therefore not reviewable under the rule of *People v. Wesley* (1964), 30 Ill. 2d 131, 136, 195 N.E.2d 708.

Nevertheless, we conclude that there are other facts alleged in the petition and supporting documents which are sufficient, if true, to establish actual incompetence and substantial resulting prejudice, and that an evidentiary hearing must therefore be held to determine if the facts are true, so as to warrant reversal of petitioner's conviction and a new trial. See generally *People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83.

Petitioner alleges in his verified petition that he spoke to his trial counsel, Mr. Mandeville, on only three occasions, that all three meetings took place on court dates in the "bull pen" adjacent to the courtroom, and that the meetings lasted a total of one, three, and three minutes, respectively. Petitioner always denied that he had participated in the

offenses charged, but when he asked about testifying as to his innocence, counsel told him there was no sense in his doing so because there was not enough evidence to convict him. Petitioner told his counsel that he had no specific recollection of his activities on the day of the murder, but that he always spent Sundays visiting his family. He also stated that it was likely that he had been with his then fiancee, Gwen Watson, and that she could be reached through her mother, Mrs. Dorothy Watson. However, Mr. Mandeville never discussed procuring any witnesses or establishing any defense for petitioner.

The petition was accompanied by affidavits by petitioner's mother, father, aunt, and uncle and by Gwen Watson, all averring that petitioner had been with them during some or all of the time during which the crimes occurred and that they had never been contacted by petitioner's trial counsel. It is also not disputed that Mrs. Watson was never contacted. Additionally, both Gwen Watson and petitioner's mother averred that they met with the public defender who represented petitioner at his preliminary hearing, Thomas Royce, and that they informed him that they and the other affiants could provide alibis for petitioner, but Mr. Royce told them that the prosecution's case was too weak to go to trial and therefore their testimony would not be required.[1]

At trial, petitioner's defense consisted of cross-examining the prosecution witnesses. While counsel was in possession of some prior statements by the witnesses, it is a matter of record that he never interviewed them. Counsel's examination of Ms. Scott impeached her by pointing up discrepancies in prior testimony, but otherwise only reinforced her direct testimony and failed to challenge petitioner's participation in the crimes. Counsel's examination of Ms. Rushing impeached her as to a minor discrepancy in a prior statement and otherwise merely served to obscure her testimony that petitioner was not the man she saw running away from the scene of the crime. Counsel presented no defense even after his motion for a directed finding of not guilty had been denied.

We believe that these facts, if taken as true and taken in their totality,

---

[1] Petitioner also alleges that he never learned of the existence of these alibis due to the allegedly unconstitutional visitation restrictions at Cook County Jail. Petitioner attempted to document the alleged unconstitutionality for the first time on appeal by introducing supporting material in his reply brief and appending the material to the excerpts from the record, though the material does not appear in the record. Petitioner further sought to amend his petition to include the newly submitted material. The State filed objections to the motion to amend and moved to strike the material from the reply brief and the excerpts on the grounds that it was never brought to the attention of the trial court, is not part of the record on appeal, and cannot be introduced for the first time in a reply brief, citing respectively *People v. Armstrong* (1st Dist. 1975), 29 Ill. App. 3d 1029, 331 N.E.2d 834 (abst.) and Supreme Court Rules 342 and 341 (Ill. Rev. Stat. 1977, ch. 110A, pars. 342 and 341). The State's objections are well taken and are sustained and the State's motion is granted, but our resolution of the case is not affected thereby.

demonstrate actual incompetence and resulting prejudice on the part of petitioner's counsel. Petitioner was charged with murder and armed robbery; petitioner charges that his counsel spent a total of seven minutes interviewing him. Petitioner denied committing the offenses charged, yet his counsel summarily rejected the possibility of his testifying and chose instead to present no defense. Defense counsel was informed by the prosecution of the existence of another suspect, Melvin Jones, whom Ms. Scott now implicates; yet counsel never discussed the possibility of using this line of defense and there is nothing in the record to suggest that it was ever investigated. Most important, defense counsel was informed of the existence of alibi witnesses and was given sufficient information to locate them; yet he never contacted any of them, although if their testimony had been in accord with their affidavits, in view of the relative paucity of the evidence on which petitioner was ultimately convicted, the result of the trial could well have been different. See *People v. Stepheny* (1970), 46 Ill. 2d 153, 158, 263 N.E.2d 83.

The State argues that "the record may be read to indicate an informed tactical decision not to use" the testimony of the alibi witnesses, because they would be open to a showing of bias, citing *People v. Martin* (1970), 44 Ill. 2d 489, 256 N.E.2d 337; *People v. Jordan* (1st Dist. 1978), 61 Ill. App. 3d 117, 377 N.E.2d 1123; *People v. Brimmer* (1st Dist. 1978), 60 Ill. App. 3d 214, 376 N.E.2d 337; *People v. Smith* (1st Dist. 1976), 42 Ill. App. 3d 109, 355 N.E.2d 601. However, in all those cases a defense was presented, or at least there was evidence that defense counsel had given the case thorough preparation, and the record did reflect a considered choice not to call the proposed witnesses. In the instant case, the record reflects instead a complete failure to investigate and prepare a possible defense, in dereliction of counsel's duty to his client.

■■ The State cites other cases which isolate one factor or another but which do not present the totality of circumstances reflected here. We do not hold that any one of the events or omissions set out above necessarily compels a finding of incompetence. Rather, each case must be judged on its own particular facts (*e.g., People v. Morris* (1954), 3 Ill. 2d 437, 449, 121 N.E.2d 810, 817), and we believe that the totality of facts presented with regard to the competence of petitioner's defense at trial require an evidentiary hearing, especially in light of the fact that the only witnesses to the crimes now both swear that petitioner did not commit them. If the facts alleged are established as true, thereby establishing incompetence and prejudice, petitioner will be entitled to a new trial. *People v. Stepheny* (1970), 46 Ill. 2d 153, 158.

■■ Petitioner next raises the issue of whether the dismissal of the incompetent counsel allegation was based on impermissible grounds, in that the post-conviction judge commented that he could only rely on Mr.

Mandeville's "fine reputation * * * and the competence that he has displayed in all other matters." However, taken in context, the statement refers to the court's belief that the petition was merely second-guessing trial tactics, the choice of which Mr. Mandeville was not available to explain due to his death after the trial. Similar remarks have been construed as permissible comment on the merits of the allegations made. (See *People v. Hannon* (1971), 48 Ill. 2d 462, 273 N.E.2d 9; *People v. Stokes* (1st Dist. 1974), 21 Ill. App. 3d 754, 316 N.E.2d 127.) While we have found that the court erred in dismissing the petition's allegations of incompetence of counsel, we do not believe that it did so on the improper basis alleged by petitioner. However, the court did express a sense of futility in holding a hearing on the allegations due to Mr. Mandeville's unavailability to testify to shed light on the supposed strategy behind his actions. We acknowledge that the task has not been made easier thereby, but we believe the allegations of the petition require a hearing as to their truth and are confident that the court will conduct as full and fair a hearing as possible under the circumstances.

■■ We next consider whether the court erred in dismissing the portion of the petition alleging State concealment of evidence favorable to the defense. Petitioner alleges concealment of an inconclusive ballistics report, negative fingerprint comparisons, and the identity of the informant who implicated a suspect other than petitioner. Even assuming concealment, for which petitioner has advanced little factual support, petitioner has failed to demonstrate that he was prejudiced thereby, and therefore no constitutional issue has been raised. (See *United States v. Agurs* (1976), 427 U.S. 97, 110, 49 L. Ed. 2d 342, 353, 96 S. Ct. 2392, 2400-01.) Petitioner also claims that the State failed to disclose inducements given to Melvin Jones and Ms. Scott, but these supposed inducements are without factual support in the record. Thus, this portion of the petition was properly dismissed.

Petitioner next argues that the court erred in dismissing his claim that the State used other perjurious testimony, besides Ms. Scott's trial testimony, against him. Specifically, he alleges that Ms. Scott's grand jury testimony, Officer Wiley's preliminary hearing testimony, and Police Investigator Melvin Duncan's testimony at the coroner's inquest were all perjurious. Once again, even assuming factual support for the allegations, petitioner has failed to show how he was prejudiced where nothing adduced at any of these pretrial proceedings was used to convict him at trial. Therefore, this portion of the petition was also properly dismissed.

Petitioner also alleges that his conviction was based on a clear and convincing standard of guilt, rather than the constitutionally mandated standard of proof beyond a reasonable doubt. (*E.g., United States v. Agurs* (1976), 427 U.S. 97, 112, 49 L. Ed. 2d 342, 354-55, 96 S. Ct. 2392,

2401-02.) This contention is also rebutted by the record, as the statement by petitioner's counsel to which the contention refers stated only that a conviction cannot be based on accomplice testimony unless it is clear and convincing (see *People v. Agnello* (1961), 22 Ill. 2d 352, 360, 176 N.E.2d 788, *cert. denied* (1962), 368 U.S. 957, 7 L. Ed. 2d 389, 82 S. Ct. 400), not that the prosecution did not have to prove guilt beyond a reasonable doubt. Even if counsel's statement were susceptible of an erroneous construction, we do not believe that the trial judge would have been so misled thereby as to base his finding of guilt on an erroneous standard. Thus, this contention was also properly dismissed.

We have examined petitioner's other contentions relating to other alleged improprieties and constitutional violations at various stages prior to trial, and have found them to be without merit. Petitioner also contends that the trial judge failed to make sufficient inquiry to resolve alleged ambiguities and conflicts in the evidence, but this is merely an attack on the sufficiency of the evidence in the guise of a due process argument, and, absent extraordinary circumstances, the court will not consider challenges to the sufficiency of the evidence in post-conviction proceedings. *People v. Moore* (1975), 60 Ill. 2d 379, 327 N.E.2d 324, *cert. denied* (1975), 423 U.S. 938, 46 L. Ed. 2d 270, 96 S. Ct. 298.

We therefore conclude that the dismissal of the petition was erroneous as to those allegations relating to the use of perjurious testimony at trial and to incompetence of counsel at trial, and that an evidentiary hearing is in order to establish the truth or falsity of the facts alleged in the relevant portions of the petition and supporting affidavits. The denial of the petition as to the allegation of in-court coercion is affirmed, as is the dismissal of the remaining allegations of the petition.

Affirmed in part; reversed and remanded in part.

DOWNING and PERLIN, JJ., concur.