THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOUGLAS CIHLAR, Defendant-Appellant.

First District (2nd Division)    No. 80-2374

Opinion filed May 18, 1982.

Ralph Ruebner, Steven Clark, and Phillip Zisook, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lester M. Joseph, and Larry J. Crown, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant was found guilty by a jury of rape, burglary and home invasion and not guilty of armed robbery. He was sentenced to a 6-year term. He raises as issues for review whether: (1) he was proved guilty beyond a reasonable doubt; (2) he was prejudiced by the State's failure to provide his attorney with a statement of a State's witness; (3) the court erred in allowing into evidence inadmissible hearsay testimony; and (4) the court erred in refusing to give an instruction as to prior inconsistent statements.

The victim testified that on June 24, 1979, she returned to her Lyons, Illinois, apartment from work with her boyfriend, who left there at 2:30 a.m. She went to bed and was awakened by the "feeling" of someone watching her, saw a man standing at the foot of her bed, and screamed. The man jumped on her bed, put his hands over her mouth and throat, and told her to shut up or he would kill her. The man was wearing a pair of women's panties around the outside of his face. His entire face was visible to her. She identified defendant as the man in her bedroom. Defendant told her he had a knife and asked her if she had any money; she said she did not. Defendant had sexual intercourse with her against her will. Thereafter, he said to her, "Al told me you were a good piece of ass and he was right." He then walked into the living room. When she thought he was gone, the victim went into the kitchen. There was a light on in the living room and she saw defendant there and again saw his face. The man ordered her back into the bedroom, pushed her back in the bed, and then left her apartment. She went to her neighbor, Marcia Londo, and banged

on the door of her apartment. This occurred at approximately 4 a.m. The victim testified further that she had initially described the rapist to the police as 6 feet tall weighing 200 pounds; however, later in the police station she saw an individual of that size and told the police her assailant was smaller. Her assailant had very high cheekbones, a squared jaw, dark curly brown hair and a blemish problem.

Richard Kluk, a Lyons police officer who arrived at the scene with his partner, Officer Stanley Augustyniak, also testified that the victim described her assailant thus; however, neither this description, nor the assailant's height and weight appeared in her written statement to the police. Kluk also testified that the victim never stated she could not see the offender's face; however, the police report indicated that she stated the panties covered her assailant's facial features. Kluk did not recall the victim relating this information to him, but noted that his partner spoke to her alone.

Officer Augustyniak testified that the statement in the police report that the panties covered the offender's facial features was his interpretation of the victim's description; however, she did not tell him what part of the offender's head was covered nor that she was unable to see her assailant's face. She had described the offender to Officer Kluk. The victim also testified she had not told Augustyniak that the panties covered the offender's facial features. After she gave her initial statement to the police, it was discovered the $8 the victim had in her purse in the kitchen was missing.

Londo testified that when the victim appeared at her door, she was hysterical and incoherent. She had to "smack" the victim because she "couldn't get anything out of her." The victim told her, "I have been raped." Londo called the police. She did "not know what was said between * * * [the victim] and the police * * *," and "did not really hear what was said between * * * [the victim] and the police."

On October 9, 1979, the victim identified defendant as her assailant in both visual and vocal lineups.

Defendant presented alibi witnesses who testified that he was in Syracuse, Indiana, the day preceding and the day of the rape where defendant was on vacation with his father. Three witnesses testified they saw defendant at 10:30 p.m. on June 23, 1979, at 11 a.m. on June 24, 1979, and in the afternoon of June 24, 1979. Defendant's father, Edward Cihlar, testified he saw defendant asleep in their trailer in Syracuse at 6 a.m. on June 24, 1979. Syracuse is a 3½ hour automobile drive from Berwyn, Illinois, where the Cihlars live. He further testified defendant did not have keys to his car and he was not allowed to drive because he had been involved in two accidents.

The jury found defendant guilty and he was sentenced as first above noted.

In a motion for a new trial, defense counsel alleged that the State failed to produce in discovery statements favorable to the defense, namely, that State witness Marcia Londo had asked assistant State's Attorney Thomas Tucker, prior to trial, how anyone could make a positive identification of a person whose face was completely covered. Attached to the motion was a sworn statement by Londo that: she was present when the victim gave her statement to the police; she did not know whether the victim told the police she could not positively identify the offender and could not swear to it; prior to trial Londo asked the assistant State's Attorney how anyone could make a positive identification of the attacker if underwear was covering his face; she told the assistant State's Attorney that the victim had said the assailant's face was covered by underwear; the assistant ignored her statement and replied that the underwear was worn on the head like a hairnet, with the legholes in the back; and, when two people from the State's Attorney's office interviewed Londo after trial, she told them the victim had told the police the attacker's face and features were fully covered.

During the hearing on the motion, Londo testified that, with police present, the victim told her the attacker's face was covered with underwear. In her sworn statement, Londo asserted the victim reported to police that "her attacker was fully masked in a pair of woman's panties, and that his facial features were completely covered * * *," although at trial she had testified that she was unable to hear the conversation that took place between the victim and the police. Following argument, the court denied the motion.

## I

Defendant first argues he was not proved guilty beyond a reasonable doubt, relying upon: evidence that defendant was in Syracuse, Indiana, on June 23, 1980, and June 24, 1980, and he was not allowed to use the family car; the contradiction of the victim's testimony that she could identify her assailant by the police report which stated his features were covered by the underwear; the police officer who showed the victim photographs of suspects in July 1979 testified that the victim described her assailant as sounding uneducated and as having a slurred voice, whereas she testified at trial there was nothing unusual about her assailant's voice; the victim's denial that the assailant knew her boyfriend, whereas she told the officer she thought her assailant had known her boyfriend; and that the lineup occurred four months after the rape. He cites *People v. Raker* (1979), 75 Ill. App. 3d 975, 394 N.E.2d 852, and

*People v. Reese* (1973), 14 Ill. App. 3d 1049, 303 N.E.2d 814, in both of which defendants' convictions for rape were reversed where evidence was presented at trial that defendants were elsewhere when the crimes occurred. Both cases are inapposite. In *Raker*, the victim could not immediately identify the defendant, and in *Reese* the victim viewed her assailant's face for only a few seconds.

The record demonstrates that defendant was proved guilty beyond a reasonable doubt. The jury could have believed that the victim observed defendant at close range, in her bedroom, and under conditions of adequate lighting. She gave two descriptions to the police which were essentially in harmony and identified defendant at pretrial visual and vocal lineups as well as in court. Both *People v. Thomas* (1979), 72 Ill. App. 3d 186, 389 N.E.2d 1330, and *People v. Patterson* (1980), 90 Ill. App. 3d 775, 413 N.E.2d 1371, are instructive in this regard. In *Thomas*, the victim's positive identification of her assailant at trial, coupled with the fact that she had observed him over a period of time under good lighting, was sufficient evidence to support a conviction. In *Patterson*, the victim's in-court identification of defendant, along with her opportunity to observe her assailant, supported defendant's conviction, even though she had merely identified defendant during a lineup as the one who "looked the closest" to her assailant. Further, the jury could have disbelieved certain of defendant's alibi evidence because of inferable discrepancies. From the foregoing, we cannot say that defendant's guilt was not proved beyond a reasonable doubt.

## II

Defendant next argues he was denied due process of law when the prosecution failed to advise his attorney of Londo's question to prosecution attorneys, which was discoverable as favorable to the defense, namely, how anyone could make a positive identification of an individual if his face was completely covered. Defendant contends he should have been informed of this favorable query, since it implies that Londo had been previously told no identification could be made. Defendant cites authority for the principle that exculpatory material or information within the prosecution's possession or control must be disclosed to the defense and urges that if Londo's question had been provided to the defense prior to trial, it could have been used in corroboration of the police report which stated the assailant's face was covered, as impeachment of the victim's testimony, and as the basis of cross-examination of Londo.

The State contends Londo's inquiry was unrelated to any prior knowledge or belief on her part that the assailant could not be identified and that Londo's question was not discoverable because defendant's right to disclosure applies only to written or recorded statements, substantially

verbatim reports of oral statements and memoranda reporting oral statements, citing *People v. Witherspoon* (1979), 69 Ill. App. 3d 391, 388 N.E.2d 1, which so holds. The court in *Witherspoon* further stated that the accused must make a preliminary showing of the existence of such a statement and that the State is not under a duty to reduce an oral question to writing. The State also observes that the favorable aspect in the police report as to the victim's ability to see defendant's face had already developed by the time Londo took the stand and she could have been cross-examined at that time with respect to this issue, suggesting, nevertheless, that such examination would have been fruitless in any event since Londo had testified that she was busy with her little girl and did not hear the conversation between the victim and the police.

■■ We note that defendant, in his motion for discovery, requested, *inter alia*, the names of witnesses favorable to the defense. Where a discovery request is specific, the failure to respond is seldom excusable; however, where a request is general, constitutional error occurs only if the omitted evidence creates a reasonable doubt that did not otherwise exist. (*People v. Jones* (1977), 66 Ill. 2d 152, 361 N.E.2d 1104, citing *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392.) The instant request is general. (See *People v. Fitzgerald* (1977), 55 Ill. App. 3d 626, 631, 370 N.E.2d 1207, in which a request for the names of persons who identified " 'anyone other than the accused as the perpetrator or participant' " was deemed general; *People v. Ruffalo* (1979), 69 Ill. App. 3d 532, 388 N.E.2d 114, wherein a request for all physical evidence was construed as a general request; and *People v. Witherspoon* in which a request for any statements made by State witnesses which recanted prior statements was considered general.) Finally, the State correctly urges that Londo's inquiry did not create a reasonable doubt which did not otherwise exist, since the information contained in the police report as to that point was already in evidence, all relevant witnesses were cross-examined as to the source of that statement, and Londo could have been questioned as to whether she had heard that statement when she testified at trial.

III

Defendant maintains that the court erred in allowing into evidence certain inadmissible hearsay. At trial, Officer Kluk, who had arrived at Londo's apartment after the rape, testified over objection as to the details of the victim's statement to him. Defendant contends the testimony did not qualify as a spontaneous declaration or corroborative complaint, both of which exceptions to the hearsay rule are discussed in *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25, and that the testimony was thus improperly admitted to bolster the victim's in-court testimony. Defendant argues that the victim's statement cannot fall within the excited utterance

exception for several reasons: the police arrived between six and 30 minutes after the victim arrived at Londo's apartment (depending upon whether Londo's or the police officers' version of events is accepted); her statement was given after a series of questions; the prosecutor had stated at trial that he was presenting the statement to "set the scene", not for its truth, and not as an "outcry" statement; and the victim had spoken to Londo before police arrived at the scene. Defendant insists further that the statement was not properly admitted as a corroborative complaint since it contained the details of the alleged rape, which are not admissible under that exception. See *People v. Buckley* (1976), 43 Ill. App. 3d 53, 356 N.E.2d 1113.

■■■ Defendant has waived this argument by failing to include it in his post-trial motion (*People v. Agee* (1980), 85 Ill. App. 3d 74, 84, 405 N.E.2d 1245); however, we examine this issue from the standpoint of determining whether to apply the "plain error" exception to these circumstances. The statement may be qualified as a spontaneous declaration insofar as Londo's testimony was concerned but not as to Officer Kluk. A similar situation occurred in *People v. Coleman* (1980), 83 Ill. App. 3d 429, 403 N.E.2d 1266, in which the court held that a rape victim's statement to police was not a spontaneous declaration after she discussed the rape with her cousin before police arrived. Although the State argues that the statement was admissible, not for its truth, but as evidence of the "scene" Kluk encountered and to explain why Kluk acted as he did, citing *People v. Thomas* (1975), 25 Ill. App. 3d 88, 92, 322 N.E.2d 597, and *People v. Daliege* (1976), 40 Ill. App. 3d 706, 709, 352 N.E.2d 247, it must be noted that the motivation for Kluk's activities was not in issue and it was unnecessary to admit into evidence the substance of the victim's statement in order to set the scene. The statement was inadmissible hearsay; however, we find that error in its admission was harmless, since the statement to police was merely cumulative of testimony of the victim and Londo, who were subject to cross-examination as to this issue. *People v. Coleman*; *People v. Daliege.*

## IV

As his final argument, defendant contends the trial court erred in failing to give the jury Illinois Pattern Jury Instruction, Criminal, No. 3.11 (1968) regarding prior inconsistent statements. Defendant argues that, whereas a police officer testified the victim told him she believed her attacker knew her boyfriend named "Al," because of his comment that "Al" said she was a "good piece of ass" and she also told the officer her assailant's voice was that of an uneducated person, and described it in terms of adjectives such as "dumb," "slurred" and "monotone," yet at trial she denied there was anything unusual about his voice and denied telling the officer she thought the offender knew her boyfriend.

■■ The victim admitted the substance of the offender's remark; whether she stated a belief that he knew her boyfriend or not is immaterial. Further, the record shows that when asked whether she had told the officer her assailant's voice was slurred or dumb, the victim replied she had told him he "didn't sound real intelligent like a college graduate." An Illinois Pattern Jury Instruction regarding inconsistent statements need be given only where there is an inconsistency between two statements on a material matter. (*People v. Svoboda* (1979), 75 Ill. App. 3d 487, 489, 394 N.E.2d 72; *People v. Villa* (1981), 93 Ill. App. 3d 196, 416 N.E.2d 1226.) We find no material contradictions which would have warranted giving the instructions here.

For the reasons aforesaid, the jury's verdict cannot be disturbed and the conviction accordingly must be affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.