THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOUGLAS CIHLAR, Defendant-Appellant.

First District (2nd Division)   No. 83—743

Opinion filed June 19, 1984.

Dennis M. Doherty, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jane E. Liechty, and Neil J. Linehan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant's previous conviction of rape, burglary, and home invasion was affirmed by this court. (*People v. Cihlar* (1982), 106 Ill. App. 3d 824, 436 N.E.2d 1041.) Defendant now appeals the circuit court's dismissal without evidentiary hearing of defendant's post-conviction petition for a new trial. (Ill. Rev. Stat. 1981, ch. 110, par. 72, now Ill. Rev. Stat. 1983, ch. 110, par. 2—1401 (section 72), and Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.* (article 122).) Defendant raises as issues on appeal that the circuit court erred in denying and dismissing his petition and accompanying motion without an evidentiary hearing.

Details regarding defendant's trial and direct appeal are fully set forth in *People v. Cihlar* (1982), 106 Ill. App. 3d 824, and will be repeated herein only as necessary.

Defendant filed his timely post-conviction petition for a new trial based on newly discovered evidence and additional grounds on May 21, 1982, claiming: he had recently located Ronda Balla, a former neighbor of the complainant, who stated that the complainant had told her shortly after the subject rape that her assailant wore a pair of panties over his head so that he could only see through the legholes; that this directly conflicted with the complainant's trial testimony that the offender wore the panties around the outside of his face, so that his whole face was visible to her; and, although interviewed by police the day of the attack, Balla had changed her residence four times since the incident and had not been available to the parties until May 1982, despite defendant's exercise of due diligence in attempting to locate her. Defendant's petition was accompanied with his counsel's affidavit, and with a handwritten statement dated May 1, 1982, and signed by Balla. In that statement Balla said that at the time of the offense she lived across the hall from the complainant and also worked with her at the Work Shop Lounge. A day or two after the incident, the complainant told her

> "that the person that raped her had a pair of panties or underwear over his head[.] I asked her how could he see then? (I thought she meant it was pulled over his entire head.) She said he was able to see with his eyes through the leg holes. I am

positive that she said the rapist looked through the leg holes of the underwear. I got the impression that she could not really identify him.

\* \* \*

I seem to specifically recall that \*\*\* [she] made a descriptive gesture describing how the rapist was able to see through the leg holes by making her fingers into a circle (touching her thumb) and placed them up to her eyes as though one would mimic one looking through a pair of binoculars. She and I then laughed about him looking through the holes."

Defendant subsequently filed a motion to admit the results of his polygraph examination or, in the alternative, to hold an evidentiary hearing as to the admissibility of this examination, because he had voluntarily submitted to a polygraph test on November 17, 1982, the results of which substantiated his innocence.

A hearing on the petition and motion was conducted on February 24, 1983. Defense counsel stated that four witnesses were present and prepared to testify that they spoke to the complainant shortly after the attack and that what she then told them concerning her ability to identify her attacker was at variance with her trial testimony. Three of the foregoing witnesses were not available at the time of trial. At the court's request, defense counsel summarized their proposed testimony in an offer of proof. Noting that one of the witnesses was Marcia Londo, who did testify at trial,[1] the court observed that the proposed testimony of defendant's witnesses would only duplicate Londo's trial testimony. Because the jury had already assessed the complainant's credibility in light of Londo's testimony, the court saw no reason to disturb the verdict. Defendant's petition was dismissed and his motion with regard to the polygraph examination denied, with no testimony being heard.

I

■ ■ Defendant initially contends that the circuit court erred by dismissing his post-conviction petition without an evidentiary hearing. The instant petition was based in the alternative on section 72 and article 122. The use of section 72 for post-conviction relief closely parallels that of article 122, and many of the same standards apply equally to both. Article 122 permits an accused to petition the trial

---

[1]Although Londo's trial testimony contained no contradictions of the complainant's testimony, she subsequently testified at the hearing on defendant's post-trial motion that the complainant had told her the panties covered her attacker's face.

court for a hearing on the issue of whether his conviction entailed a "substantial denial" of his constitutional rights. (Ill. Rev. Stat. 1983, ch. 38, par. 122—1.) The provisions of the article are to be liberally construed, and all well-pleaded facts in the petition and in any accompanying affidavits are to be treated as admitted; the accused nevertheless bears the burden of making a substantial showing of a constitutional violation. (*People v. Reeves* (1952), 412 Ill. 555, 560, 107 N.E.2d 861; *People v. Pier* (1972), 51 Ill. 2d 96, 98, 281 N.E.2d 289; *People v. Reed* (1980), 84 Ill. App. 3d 1030, 1040, 405 N.E.2d 1065.) To require an evidentiary hearing, the petition must be based on clear factual allegations and not on mere conclusional statements. (*People v. Hysell* (1971), 48 Ill. 2d 522, 527, 272 N.E.2d 38.) In the context of a conviction alleged to have been obtained through the use of perjured testimony, a violation of an accused's due process rights, such a petition must specify the nature of the evidence of perjury, its source, and its availability. *People v. Ashley* (1966), 34 Ill. 2d 402, 411, 216 N.E.2d 126.

■ The instant petition, alleging that a newly discovered witness, Balla, unavailable at the time of trial, would testify that the complainant herein had told her, shortly after the rape, that her attacker's face was covered by a pair of panties and that he could only look through the leg-holes, thereby directly contradicting the complainant's trial testimony, was sufficiently particular as to the nature, source, and availability of the evidence of perjury.[2] In Illinois, "[a] person commits perjury when, under oath or affirmation *** he makes a false statement, material to the issue or point in question, which he does not believe to be true." (Ill. Rev. Stat. 1983, ch. 38, par. 32—2(a).) In the case at bar, the complainant's identification testimony was the only evidence connecting defendant to the crime; therefore, any evidence reflecting on her ability to make this identification is necessarily "material." The inconsistency between her trial testimony and her alleged post-occurrence statement, moreover, is so significant as to raise the inference that one or the other is untruthful.[3]

The State argues that this was only a minor inconsistency which goes to the complainant's credibility and does not constitute perjury.

---

[2]Although the petition mentions only Balla, the representation by defense counsel at argument was that two other witnesses, not available at trial, would also so testify.

[3]In an analogous context, one appellate court observed: "A witness who can testify positively that a slain victim did not have a gun would be committing perjury if he were to testify that he did not know whether the victim had a gun." *People v. Moretti* (1952), 349 Ill. App. 67, 74, 109 N.E.2d 915.

The cases cited by the State, however, are distinguishable from the instant situation. In *People v. Somerville* (1969), 42 Ill. 2d 1, 245 N.E.2d 461, perjury was not established where a witness variously testified that he "expected" leniency at sentencing and that he "hoped for" leniency. In *People v. Rose* (1969), 43 Ill. 2d 273, 253 N.E.2d 456, the supreme court found only a "superficial contradiction" in the testimony of a complainant that she was "forced" to eat pizza and drink and her statement that the rape at issue there was accomplished without "force." In these cases, the "inconsistencies" could be readily reconciled; here, however, the alleged contradiction goes to the heart of the State's case against defendant and challenges the complainant's ability to identify her assailant. Moreover, in the cited cases, unlike here, the trial courts held evidentiary hearings before dismissing the petitions. Finally, in *People v. Orndoff* (1968), 39 Ill. 2d 96, 233 N.E.2d 378, defendant's petition was dismissed because the facts allegedly establishing perjury were available to defendant there at the time of trial, unlike the situation here.

■ The State also contends that the alleged inconsistency was already litigated at trial, at the hearing on defendant's post-trial motion, and on direct appeal, and that the present evidence is only cumulative; consequently, defendant is now precluded from raising this matter in a post-conviction proceeding. (See *People v. Meeks* (1975), 31 Ill. App. 3d 396, 400, 334 N.E.2d 253 (article 122); *Brunswick v. Mandel* (1974), 59 Ill. 2d 502, 504, 322 N.E.2d 25 (section 72).) At trial, the inconsistency appeared in a police report which noted that the rapist "was wearing a woman's panty over his head covering his facial features." On cross-examination, the complainant denied telling police that her attacker's features were covered. Officer Stanley Augustyniak, called to testify by defendant, acknowledged that he wrote the report based on his "interpretation" of the complainant's statements, but denied that she said specifically that the rapist's features were covered. Although the jury was thus exposed to the inconsistency, the complainant's and the officer's denials made it appear that the inconsistency was attributable to the officer, who wrote the report some time after interviewing the complainant; there was no testimony that the complainant actually made an inconsistent statement. Londo, who testified to the inconsistency at the post-trial hearing, did not do so at trial, although conceivably she could have been cross-examined as to the statement in the police report, since she was present when police interviewed the complainant. On appeal, the matter of the inconsistency arose in a different context, that of the State's failure to produce Londo's "favorable" question to a prosecu-

tor in response to defendant's general request for discovery. *People v. Cihlar* (1982), 106 Ill. App. 3d 824, 828-29.

Although the inconsistency was known to defendant at the time of trial, the witnesses who could have testified to it were unknown, despite defendant's alleged exercise of due diligence. Defendant's failure at trial to elicit Londo's knowledge of the inconsistency, considering the likelihood that she may have been privy to such statement, may have been his own fault. The testimony of the other witnesses knowing of the inconsistency would have only corroborated Londo's testimony at the post-trial hearing, and in this sense would have been merely cumulative. The question is thus whether defendant should have been denied a post-conviction hearing because he was able to but failed to cross-examine Londo based on the complainant's inconsistent statement in a police report. Troubling here is the circuit court's apparent assumption, in dismissing defendant's petition, that the jury heard Londo's direct contradiction of the complainant. In the hearing on the post-conviction petition, the court remarked that the additional witnesses found by defendant "would again say nothing more than what the witness Marcia Londo said to twelve good people sitting in that jury box there." The court reasoned that the jury evaluated the credibility of the complainant and Londo, and chose to believe the complainant. The court concluded that "[n]othing in this record, in my opinion, would change the jury's verdict, and therein lies the flaw or fatal defect in this motion." When advised that Londo never contradicted the complainant before the jury, the court responded, "You may be correct, I don't know," but nevertheless denied the petition, again noting the jury's superiority in assessing credibility.

The State also urges that an evidentiary hearing was properly denied because the circuit court, having heard the testimony at trial and having before it the defendant's petition, affidavit, and offer of proof, could assess the witnesses' credibility and determine whether perjury had been committed. (See *People v. Reed* (1980), 84 Ill. App. 3d 1030, 1041.) The circuit court based its dismissal of defendant's petition on the jury's assessment of the complainant's credibility; the court's reliance on the jury's finding, however, was apparently premised on the mistaken belief that her testimony had been directly contradicted at trial. It cannot be said that, had the jury heard a parade of witnesses testify to the inconsistent statement, its decision would have been the same. The instant case hinged entirely on the complainant's identification testimony implicating defendant. This is not a case, therefore, where defendant is not entitled to post-conviction relief because other ample evidence established his guilt. *People v. Moore* (1975), 60 Ill. 2d

379, 386, 327 N.E.2d 324.

Although an evidentiary hearing is not a matter of right (*People v. Meeks* (1975), 31 Ill. App. 3d 396), and a circuit court's denial of such a hearing will not be reversed absent an abuse of discretion (*People v. Reed* (1980), 84 Ill. App. 3d 1030, 1040), the circuit court's mistaken reliance on the jury's assessment here requires a full hearing, in which the court itself would determine whether perjury was committed. Where a claim of substantial denial of constitutional rights is based on evidence outside the record, as here, article 122 contemplates an evidentiary hearing to resolve the claim. *People v. Sigafus* (1968), 39 Ill. 2d 68, 70, 233 N.E.2d 386.

■ Finally, the State maintains that a constitutional violation was not established because defendant did not allege that the State had knowingly used perjured testimony. In Federal court, a defendant must show that material perjured testimony was used knowingly and intentionally by prosecuting authorities. (*E.g., United States ex rel. Burnett v. Illinois* (7th Cir. 1980), 619 F.2d 668, 674; *Anderson v. United States* (7th Cir. 1968), 403 F.2d 451, 454.) In Illinois the foregoing position is taken by the fifth district appellate court (*People v. Oswalt* (1975), 26 Ill. App. 3d 224, 227, 324 N.E.2d 666), and the fourth division of the first district (*People v. Berland* (1983), 115 Ill. App. 3d 272, 274, 450 N.E.2d 979).[4] Contrariwise, the fourth district appellate court in *People v. Sims* (1972), 4 Ill. App. 3d 878, 282 N.E.2d 16, found that both knowing and unknowing use of perjured testimony amounted to constitutional error. This division has also adhered to this latter position. In *People v. Shannon* (1975), 28 Ill. App. 3d 873, 878, 329 N.E.2d 399, we observed:

> "Known to the State or not, the use of *** perjured testimony is a miscarriage of justice which is abhorrent to fundamental fairness and as such is intolerable. Perjury is the mortal enemy of justice, and the battle between them must be waged at every level, including the constitutional."

This position has been maintained in subsequent decisions. (*People v. Bland* (1978), 67 Ill. App. 3d 716, 720, 384 N.E.2d 1380; *People v. Alfano* (1981), 95 Ill. App. 3d 1026, 1031, 420 N.E.2d 1114 (under section 72).) The third division of the first district has adopted this stance with respect to section 72 petitions. *People v. Hilliard* (1978), 65 Ill. App. 3d 642, 647, 382 N.E.2d 441.

The supreme court has not squarely addressed this split of author-

---

[4]Significantly, defendants' petitions in these cases were not dismissed until after evidentiary hearings had been held.

ity. In *People v. Frank* (1971), 48 Ill. 2d 500, 272 N.E.2d 25, defendant's post-conviction petition there failed because, among other things, it did not allege a knowing use of perjured testimony. In *People v. Shannon* (1975), 28 Ill. App. 3d 873, we did not find this to be binding precedent since *Frank* involved the knowing use of such testimony. This reading of *Frank* was noted but not rejected by the supreme court in *People v. Cornille* (1983), 95 Ill. 2d 497, 511, 448 N.E.2d 857, which held that it did not have to adopt the *Shannon* approach to find a constitutional violation in the State's use of an expert witness who had falsified his credentials. Under the continuing authority of *Shannon*, therefore, it was not necessary for defendant here to allege knowing use of perjured testimony in order to avail himself of post-conviction relief.

■ Through his petition, affidavit, and offers of proof, defendant established the existence of a factual question regarding the use of perjured testimony in his conviction. Because such issue had not been raised in substance before, and since the evidence allegedly had not come to light until after defendant had been found guilty, despite the alleged exercise of due diligence, an evidentiary hearing is necessary to determine both whether this evidence was unavailable at trial and, if it was not available, whether the complainant had committed perjury. The circuit court's mistaken deference to the jury's assessment of the complainant's credibility cannot substitute for such a hearing contemplated by statute to vindicate an accused's constitutional rights: the court, not the jury, is the fact finder at such a hearing in which defendant has the burden of showing by clear and convincing proof that perjured testimony was used against him; if defendant succeeds, the burden shifts to the State to show beyond a reasonable doubt that this tainted testimony did not contribute to his conviction. *People v. Bracey* (1972), 51 Ill. 2d 514, 519-20, 283 N.E.2d 685; *People v. Cornille* (1983), 95 Ill. 2d 497, 514.

## II

■ Defendant also assigns error to the circuit court's denial of his motion to hold an evidentiary hearing to determine the admissibility of his polygraph examination. Under Illinois law, such a hearing would have been futile. (*People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070; see also *People v. Yarbrough* (1982), 93 Ill. 2d 421, 426-27, 444 N.E.2d 493.) Such evidence also has been held inadmissible in post-conviction proceedings. *People v. Hilliard* (1982), 109 Ill. App. 3d 797, 801, 441 N.E.2d 135.

■ Defendant analogizes the acceptance of polygraph evidence to

that of fingerprint evidence, arguing that he was denied an opportunity to demonstrate the current scientific reliability of polygraph examinations. This contention must also be rejected. Our supreme court has very recently held that polygraphy "has not reached a level of sophistication that makes it generally more probative than prejudicial." *People v. Baynes* (1981), 88 Ill. 2d 225, 239.

Accordingly, we reverse and remand for an evidentiary hearing on the issue of whether the newly discovered evidence was unavailable at trial despite the exercise of due diligence, and, if unavailable, whether perjured testimony was used to convict defendant.

Reversed and remanded.

STAMOS and PERLIN, JJ., concur.